UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL RAY ARROYO,
          Plaintiff,

          v.

                                        CIVIL ACTION NO.
                                        13-10204-PBS
LISA M. BOCELLI,
          Defendant.

MEMORANDUM AND ORDER
February 8, 2013

SARIS, C.D.J.

**I.   INTRODUCTION**

A.   The Instant Action

On February 1, 2013, plaintiff Michael Ray Arroyo
("Arroyo"), a resident of Franklin, Massachusetts, filed a Motion
for Leave to Proceed *in forma pauperis* (Docket No. 3) along with
a self-prepared complaint against Lisa M. Bocelli, an alleged
resident of Worcester, Massachusetts and an employee of UMass
Memorial Medical Center ("UMMC").  The complaint is disjointed
and is set forth in stream-of-consciousness narrative form.  From
what can be discerned, however, Arroyo's claims stem from alleged
physical abuse by hospital staff at UMMC.  He contends that the
defendant was negligent in admitting him as a patient at UMMC.
He alleges:

> Lisa M. Bocelli is guilty of Raping me with the Abusing
> Holy ghost of Jesus Christ made from God and then
> making the neglectful action of admitting me as a
> patient to very Abusive Dr's and nurses in the
> University building.

Compl. (Docket No. 1 at 3).  He further charges the defendant
with conspiracy, stating:

> Lisa M. Bocelli used the Abusive Holy ghost of Jesus
> Christ made from God to form a secret plan by the Dr's
> and Nurses to severely abuse me in Umass Memorial
> Medical Center.  I was almost killed.  Read Lie
> Detector Test[.] The test tells you all facts of severe
> abuse that Lisa M. Bocelli put me through by admitting
> me as a patient as I wast geting [sic] raped by the
> Holy ghost of Jesus Christ made from God.  Lisa M.
> Bocelli has not saved my life yet from being tortured
> and raped in the Commonwealth of Massachusetts.

Id. at 4-6.[1]  He seeks $20,000.00 for her negligence.

Included in the complaint is an allegation that all doctors

at UMMC are guilty of conspiracy, and that they engaged in a

secret plan to harm him.  In support of his claims, Arroyo

attached a copy of the polygraph examination report, as well as a

copy of his driver's license.  On the page containing the copy of

the driver's license, Arroyo refers to himself as "Prince of

Peace" and the "Honorable Michael Ray Arroyo."  Id. at 10.  In

addition, Arroyo attached a letter to the Massachusetts

Commission Against Discrimination ("MCAD"), dated October 30,

2009, in which he contended that he was abused by two nurses

injecting needles into his right arm, on or about November 8,

2008.  When he refused injections, two nurses held him down in

order to inject another needle.  He contended that he was abused

and that he was "raped from my freedom."  Id. at 12.

Additionally, from the MCAD exhibit, it appears that UMMC

---

[1]     The lie detector test to which Arroyo refers is a
polygraph examination taken in 2010 after Arroyo claimed physical
abuse at UMMC, which indicated that Arroyo was being truthful in
his allegations of abuse.  See Exhibit (Docket No. 1-1 at
11)(report of results of polygraph test).

had contacted the Worcester Probate Court, and the court issued a warrant to pick him up.  The Franklin Police arrived at his residence, forced Arroyo into an ambulance and transported him to the Milford Regional Medical Center, where he was placed under supervision.  Thereafter, a uniformed UMMC police officer transported him to UMMC where he was placed under 24 hour surveillance.  The doctors on call would not discharge him.  He was told he needed a PICC line placement (a plastic tube used for giving intravenous fluids and medications), but he refused.  He claims he was forced to have this procedure, causing him great pain.  He contends his life was in danger because the sharp rod almost touched his internal organs.  He deems this to have been rape.[2]

Finally, Arroyo attaches various medical records, reports, and copies of photographs of his hospital room.  He includes handwritten comments on these photographs pointing out unsanitary conditions at UMMC.

On February 5, 2013, Arroyo filed a Motion for Default Judgment with an incorporated request for an emergency hearing (Docket No. 5).  He seeks to have the defendant arrested and held with charges of conspiracy.

B.   Prior Litigation Relating to Arroyo's Care at UMMC

This is not the first time Arroyo has raised the claims that

---

[2]   Arroyo attaches photographs of his arm showing where he was injected with a needle.

stem from his alleged physical abuse by medical staff at UMMC.

On August 31, 2012, Arroyo filed his first civil complaint in this Court against the Commonwealth of Massachusetts.  He alleged physical abuse (*e.g.*, his "bone was raped") by hospital staff and alleging medical malpractice during a surgical operation (presumably the PICC line procedure).  See <u>Arroyo v. State of Massachusetts</u>, Civil Action No. 12-11695-WGY. His claims related to both UMMC and the Milford Regional Medical Center.  He also claimed the Board of Health in Worcester, Massachusetts failed to inspect UMMC, and that the Commonwealth of Massachusetts was pressuring him to pay taxes notwithstanding the abuse he suffered.

On September 14, 2012, Judge William G. Young dismissed the action *sua sponte,* <u>see</u> Memorandum and Order (Docket No. 6), noting the pleading deficiencies under Rule 8 of the Federal Rules of Civil Procedure, and holding that Eleventh Amendment sovereign immunity barred Arroyo's claims.[3]  Thereafter, Arroyo appealed to the United States Court of Appeals for the First Circuit ("First Circuit").  The First Circuit summarily affirmed

---

[3]     Prior to the dismissal of that action, on September 11, 2012, Arroyo filed a second lawsuit against the Commonwealth of Massachusetts.  <u>See</u> <u>Arroyo v. State of Massachusetts</u>, Civil Action No. 12-11746-GAO.  That lawsuit alleged that he was the victim of identity theft, and complained that the Social Security Administration would not issue a new social security number to him.  On October 10, 2012, Judge George A. O'Toole dismissed the action *sua sponte*.  <u>See</u> Memorandum and Order (Docket No. 6).

the dismissal by the District Court.  <u>See</u> <u>Arroyo v. State of</u>
<u>Massachusetts</u>, No. 12-2302 (1st Cir. Dec. 28, 2012)(Mandate).

Undeterred by Judge Young's dismissal, on September 28,
2012, Arroyo filed two more lawsuits stemming from his alleged
medical abuse.  In the first of the two actions, <u>Arroyo v. State</u>
<u>of Massachusetts, et al.</u>, Civil Action No. 12-11845-WGY, he sued
the Commonwealth of Massachusetts again alleging he was abused
when a UMMC doctor performed surgery on his arm (on December 19,
2007), and again on November 8, 2008 and November 20, 2008, when
he was abused by staff at UMMC when he was injected with needles
without his consent.  In addition to those medical care claims,
Arroyo also alleged that the Town of Framingham was liable for
pressuring him to pay taxes (<i>i.e.</i>, excise tax of $82.05 on his
1986 Ford) while he was abused.  He named James P. Dacey, the Tax
Collector and Town Treasurer, as a defendant.

In the second contemporaneously-filed suit, Arroyo
reiterated his claims of abuse and medical malpractice.  <u>Arroyo</u>
<u>v. State of Massachusetts, et al.</u>, Civil Action No. 12-11846-
WGY).  In addition to naming the Commonwealth of Massachusetts,
he named as defendant Michael P. Hirsh, the Acting Commissioner
of the Board of Health in Worcester, Massachusetts, for failing
to inspect thoroughly UMMC.  He also claimed the defendant failed
to notify UMMC workers that honesty needed to be demonstrated and
that abuse was not acceptable.

On October 10, 2012, Judge Young issued a consolidated Memorandum and Order (Docket No. 6 in both cases) dismissing *sua sponte* the claims against the Commonwealth and the defendants in their official capacity, and directing Arroyo to demonstrate good cause why both actions should not be dismissed.  The Memorandum and Order addressed the various legal impediments to Arroyo's claims, including, *inter alia*, the statute of limitations problem (noting that the alleged violations by medical staff occurred in 2007 and 2008), the lack of *respondeat superior* liability, and the failure to state a cognizable negligence claim under the Massachusetts Tort Claims Act.  On November 27, 2012, Judge Young dismissed both cases after finding that Arroyo's amended complaints and show cause responses did not demonstrate good cause not to dismiss those actions.

## II.  DISCUSSION

A.   <u>The Motion for Leave to Proceed *In Forma Pauperis*</u>

Upon review of Arroyo's financial disclosures indicating that he has no assets or income, this Court finds that he lacks sufficient funds to pay the filing fee for this action. Accordingly, his  Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u>.

B.   <u>Screening of the Complaint</u>

Because Arroyo is proceeding *in forma pauperis*, his Complaint is subject to preliminary screening under 28 U.S.C.

6

§ 1915(e)(2).  This statute authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action is malicious, frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2); <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

In addition to the statutory screening provisions, this Court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction.  <u>See</u> <u>McCulloch v. Velez</u>, 364 F.3d 1, 5 (1st Cir. 2004); Fed. R. Civ. P. 12(h)(3)("If the court determines ... it lacks subject matter jurisdiction, the court must dismiss the action.").  <u>See also</u> <u>In re Recticel Foam Corp.</u>, 859 F.2d 1000, 1002 (1st Cir. 1988)("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").  For purposes of preliminary screening, the Court liberally construes Arroyo's complaint because he is proceeding *pro se.*  <u>See</u> <u>Hughes v. Rowe</u>, 449 U.S. 5, 9 (1980);  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972);  <u>Instituto de Educacion Universal Corp. v. U.S. Dept. of Education</u>, 209 F.3d 18, 23 (1st Cir. 2000).  Nevertheless, even under a liberal construction, Arroyo's Complaint will be dismissed for the reasons discussed below.

C.   Lack of Subject Matter Jurisdiction

As a threshold matter, Arroyo's complaint must be dismissed for failure to set forth a *bona fide* basis for this Court's subject matter jurisdiction either under 28 U.S.C. § 1331 (federal question) or under 28 U.S.C. § 1332 (diversity jurisdiction).

1.   No Federal Question Presented

Federal district courts have original jurisdiction over "federal question" cases.  A federal question "aris[es] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; Vigueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998). A claim arises under federal law within the meaning of § 1331 if a federal cause of action emerges from the face of a well-pleaded complaint.  See City of Chicago v. International College of Surgeons, 522 U.S. 156, 163 (1997).  The well-pleaded complaint rule generally restricts the exercise of federal question jurisdiction to instances in which a federal claim is made manifest within the four corners of a plaintiff's complaint. Vigueira, 140 F.3d at 17.

In this case, as noted above, Arroyo's cause of action rests on the alleged negligence of the defendant in admitting him to UMMC.  Although he uses the term "conspiracy" he has not set forth any factual or legal basis whatsoever for a federal claim within the four corners of the complaint.

8

2.   <u>No Diversity Jurisdiction</u>

In addition to federal question jurisdiction, district
courts have original jurisdiction over civil actions between
citizens of different states where the amount in controversy
exceeds $75,000.00.  28 U.S.C. § 1332(a).  Diversity must be
complete: the citizenship of each plaintiff must be shown to be
diverse from that of each defendant.  <u>Owen Equip. & Erection Co.
v. Kroger</u>, 437 U.S. 365, 373-74 (1978).

In this case, Arroyo alleges that he is a resident (and
presumed citizen) of Massachusetts, as is the defendant.  Thus,
there is no diversity of citizenship presented.  Moreover, Arroyo
alleges that the amount in controversy is $20,000.00, a sum less
far than the jurisdictional amount necessary for diversity
jurisdiction.

In light of the above, Arroyo has not demonstrated
sufficiently that this Court has subject matter jurisdiction over
his claims against Lisa M. Bocelli.  Accordingly, the complaint
will be dismissed on this basis.

D.   <u>Failure to Plead Claims Pursuant to Fed. R. Civ. P. 8</u>

Even if this Court were to consider that Arroyo is
attempting to assert a civil rights action rather than a state-
law negligence action, there are still a number of legal
impediments that would subject this action to dismissal.

First, the complaint fails to set forth plausible civil

rights claims under Rule 8(a) of the Federal Rules of Civil
Procedure.  Rule 8 requires a plaintiff to include in a
complaint, among other things, "a short and plain statement of
the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2). This statement must " 'give the defendant
fair notice of what the ... claim is and the grounds upon which
it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555
(2007) (alteration in original) (quoting Conley v. Gibson, 355
U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33
(1st Cir.2005); Phelps v.Local 0222, 2010 WL 3342031, at *5 (D.
Mass. 2010).  The complaint must afford the defendant(s) a " [']
meaningful opportunity to mount a defense.'" Diaz–Rivera v.
Rivera–Rodriguez, 311 F.3d 119, 123 (1st Cir. 2004)(quoting
Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir.
1995)); see Redondo–Borges v. U.S. Dept. of Housing and Urban
Dev., 421 F.3d 1, 5 (1st Cir. 2005); Benyamin v. Commonwealth
Med. UMass Med. Ctr., Inc., 2011 WL 2681195, *2, (D. Mass. 2011).
"In a civil rights action as in any other action ..., the
complaint should at least set forth minimal facts as to who did
what to whom, when, where, and why." Educadores Puertorriquenos
en Action v. Hernandez, 367 F.3d 61, 68 (1st Cir.2004).  Although
"the requirements of Rule 8(a)(2) are minimal ... [,] 'minimal
requirements are not tantamount to nonexistent requirements.'"
Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st

Cir. 1988))(internal punctuation and additional citations
omitted)).

Here, as noted above, Arroyo's complaint is not entirely
coherent.  Apart from his bald allegations that the defendant was
negligent in admitting him to UMMC and that she conspired to
cause abuse by the medical staff at UMMC, he presents no
underlying factual allegations to support his claims.  "A civil
rights conspiracy as commonly defined is 'a combination of two or
more persons acting in concert to commit an unlawful act, or to
commit a lawful act by unlawful means, the principal element of
which is an agreement between the parties to inflict a wrong
against or injury upon another, and an overt act that results in
damages.'"  Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.
1988)(internal quotations omitted)).  A general allegation of
conspiracy to violate civil rights is not sufficient to meet the
pleading requirement to assert cognizable claims of a conspiracy.
Rather, the allegations must set forth what part each defendant
had in the alleged conspiracy, *i.e.*, it must set forth the "who
did what to whom and why."  Columbus v. Biggio, 76 F. Supp. 2d,
43, 52 (D. Mass. 1999)("Although pleading standards are minimal,
the First Circuit requires 'more than conclusions or subjective
characterizations.'") citing Dewey v. University of New
Hampshire, 694 F. 2d 1, 3 (1st Cir. 1982), cert. denied, 461 U.S.
944 (1983).  Arroyo fails to set forth this necessary information

to state a plausible claim upon which relief may be granted.
Significantly, Arroyo previously has been advised by this Court
about the Rule 8 pleading requirements.  It does not appear that
he attempted remotely to comply with these requirements when
filing this action.

Accordingly, even if there were subject matter jurisdiction
over a conspiracy claim under 42 U.S.C. § 1983, Arroyo's claims
would be subject to dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)(B)(ii)(failure to state a claim upon which relief
may be granted).[4]

E.   The Statute of Limitations As a Bar to Arroyo's Claims

As Judge Young previously noted, Arroyo's claims stemming
from his alleged medical abuse at UMMC occurred in 2007-2008.
Any alleged wrongdoing of the defendant Lisa M. Bocellin in
admitting him therefore necessarily must have occurred during
that time period.  Presuming that to be the case, Arroyo's claims
against this defendant appear to be barred by the statute of
limitations (whether as a state-law negligence claim or as a
civil rights claim under 42 U.S.C. § 1983).  As Judge Young
noted, the statute of limitations for claims under the Civil
Rights Act is three years.  Nieves v. McSweeney, 241 F.3d 46,
52-53 (1st Cir. 2001) (§ 1983); Johnson v. Rodriquez, 943 F.2d

---

[4]    This Court need not address the issue of state action
in light of the dismissal based on lack of subject matter
jurisdiction.

104, 107 (1st Cir. 1991) cert. denied, 112 S. Ct. 948 (1992)

(§ 1981); Govan v. Trustees of Boston Univ., 66 F. Supp. 2d 74,

80 (D. Mass. 1999)(§ 1981, 1985). Cf. Rodriguez-Garcia v.

Municipality of Caguas, 354 F.3d 91, 96 (1st Cir. 2004)(§§ 1981,

1983, and 1985 borrow the forum state's statute of limitations

for personal injury claims); Mass. Gen. Laws ch. 260, § 2A

(three-year statute of limitations for personal injury claims);

Owens v. Okure, 488 U.S. 235 (1989).[5]

This Court recognizes that a complaint may be dismissed on

statute of limitations grounds "only if 'the pleader's

allegations leave no doubt that an asserted claim is

time-barred.'"  Young v. Lepone, 305 F.3d 1, 8 (1st Cir.

2002)(quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d

---

[5]     "The primary purpose of a statute of limitations is to
prevent plaintiffs from sleeping on their rights and to prohibit
the prosecution of stale claims."  Barrett ex rel. Estate of
Barrett v. U.S., 462 F.3d 28, 41 n.11 (1st Cir. 2006) quoting
Edes v. Verizon Communications, Inc., 417 F.3d 133, 142 (1st Cir.
2005).   Under Massachusetts law, a statute of limitations period
"begins to run when a plaintiff discovers, or any earlier date
when [he] or she should reasonably have discovered, that [he] or
she has been harmed or may have been harmed by the defendant's
conduct."  Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st
Cir. 2006) citing Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990).
"A plaintiff is considered to be on "inquiry notice" when the
first event occurs that would prompt a reasonable person to
inquire into a possible injury at the hands of the defendant."
Epstein, 460 F.3d at 187 citing Szymanski v. Boston Mut. Life
Ins. Co., 56 Mass. App. Ct. 367 (2002); see Marino v. Gammel, 191
F. Supp. 2d 243, 253 (D. Mass. 2002)(Keeton, J.)("In this
circuit, Bivens and Section 1983 claims accrue at the moment the
plaintiff knows, or has reason to know, of the injury that is the
basis for the claims.").

507, 509 (1st Cir. 1998)).   The First Circuit has held, however, that "a complaint which states a claim that appears to have expired under the applicable statute of limitations may be dismissed as frivolous" under the *in forma pauperis* statute. Johnson, 943 F.2d at 107 (quoting Street v. Vose, 936 F.2d 38, 39 (1st Cir. 1991), cert. denied, 112 S. Ct. 948 (1992)).   That appears to be the case here, particularly where Arroyo made claims of physical abuse against UMMC staff as early as October 30, 2009 (as evidenced by the MCAD letter), more than three years before filing the instant suit.   Nevertheless, this Court need not address definitively the statute of limitations issue further at this time.

Because Arroyo has raised claims in this suit and in his prior suits concerning his treatment at UMMC that appear to be time-barred, this Court finds that further action is necessary to ensure that scarce judicial resources are not wasted by him. Accordingly, it is hereby Ordered that, should Arroyo seek to assert any claims in the future that stem from his alleged physical abuse at UMMC in 2007-2008, he must demonstrate, at the time of filing any new complaint, that his claims are not time-barred by the statute of limitations as discussed above.

E.   The Motion For Default Judgment and for Emergency Hearing

In light of the above, Arroyo's Motion For Default Judgment and for Emergency Hearing (Docket No. 5) will be DENIED as this

14

Court lacks jurisdiction over the request.  Moreover, no summonses have issued in this case, and no default has entered. Thus, there is no basis for this relief, and no reason to hold an emergency hearing in this matter.

With respect to Arroyo's request for the arrest and prosecution of the defendant, there is no jurisdiction over this civil case and thus no basis for such relief.  More importantly, a private citizen such as Arroyo cannot bring the criminal prosecution of another.  Federal courts do not have jurisdiction over criminal cases unless they are prosecuted by the United States Attorney.  See e.g., Pugach v. Klein, 193 F. Supp. 630, 633-635 (S.D.N.Y. 1961)(power to enforce criminal law vested in executive branch by Constitution; no residual power in private citizens to enforce law when United States Attorney does not prosecute).  Arroyo does not have standing to bring a criminal action against the defendant because no statute authorizes him to do so.[6]

---

[6]    See Kennan v. McGrath, 328 F.2d 610, 611 (1st Cir. 1964)(*per curiam*); accord Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989)(*per curiam*)(stating that only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242); Stone v. Warfield, 184 F.R.D. 553, 555 (D. Md. 1999)(stating that individual citizens have no private right of action to institute federal criminal prosecutions); cf. Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)(a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another).

### III.  CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1.  Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 3) is <u>ALLOWED</u>; and

2.  Plaintiff's Motion For Default Judgment and for Emergency Hearing (Docket No. 5) is <u>DENIED</u>;

3.  This action is <u>DISMISSED</u> in its entirety *sua sponte* for lack of subject matter jurisdiction; and

4.  Should plaintiff seek to assert any claims stemming from alleged physical abuse at UMass Memorial Medical Center occurring in 2007-2008, he must demonstrate, at the time of filing suit, that his claims are not barred by the statute of limitations.


SO ORDERED.

                                    /s/ Patti B. Saris
                                    PATTI B. SARIS
                                    UNITED STATES DISTRICT JUDGE